**CASE NO. 22-1340**

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

MICHAEL LEE HUNTER,

        Plaintiff—Appellant,

v.

KELLY MUESKE and
TYSHEME WALKER

        Defendant—Appellees.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EATERN DISTRICT OF WISCONSIN
CASE NO. 18-CV-1500
HON. WILLIAM E. DUFFIN

**REPLY BRIEF OF PLAINTIFF–APPELLANT**

**CADE LAW GROUP LLC**

Nathaniel Cade, Jr.*
Annalisa Pusick
P.O. Box 170887
Milwaukee, WI 53217
Phone: (414) 255-3802
Fax: (414) 255-3804
nate@cade-law.com
annalisa@cade-law.com

Attorneys for Appellant
*Lead Counsel of Record*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS....…................................................................…........ii

TABLE OF AUTHORITIES ........................................................................iii

ARGUMENT .................................................................................................5

   I.   Mueske and Walker had Adequate Knowledge that Patterson Presented a Serious Risk of Harm to Hunter. ...................................................... 6

       *A.*   *Hunter communicated several specific and credible threats that were continually ignored.* ........................................................ 7

       *B.*   *Hunter's complaints highlighted an imminent threat that materialized into severe, preventable injuries.* ........................................ 7

   II.   Mueske and Walker Were Deliberately Indifferent to a Serious Risk of Harm and Failed to Take Reasonable Measures to Protect Hunter............... 10

   III.  Mueske and Walker's Inaction Casually Impacted Hunter's Severe Injuries……........................................................................................... 16

   IV.  Hunter's Behavior Was of Self-Protection Because Patterson Was a Known, Violent Individual. ..................................................................... 22

CONCLUSION ......................................................................................... 25

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(A)(7),

FRAP RULE 32(G), AND FRAP RULE 32(C)............................................ 26

PROOF OF SERVICE ................................................................................ 27

# TABLE OF AUTHORITIES

## CASES

*Balsewicz v. Pawlyk,*
 963 F.3d 650 (7th Cir. 2020) ................................................................. 8, 9

*Berman v. Young,*
 291 F.3d 976 7th Cir. 2002) ................................................................ 17

*Billman v. Ind. Dep't of Corrections,*
 56 F.3d 785 (7th Cir. 1995) ................................................................ 15

*Burks v. Raemisch,*
 555 F.3d 592 (7th Cir. 2009) ............................................................... 20

*Dale v. Poston,*
 548 F.3d 563 (7th Cir. 2008) ........................................................... 6, 15

*Del Raine v. Williford,*
 32 F.3d 1024 (7th Cir. 1994) ............................................................... 22

*Dixon v. Godinez,*
 114 F.3d 640 (7th Cir. 1997) ............................................................... 22

*Farmer v. Brennan,*
 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ................................... passim

*Gayton v. McCoy,*
 593 F.3d 610 (7th Cir. 2010) ............................................................... 18

*Gevas v. McLaughlin,*
 798 F.3d 475 (7th Cir. 2015) ........................................................... passim

*Heck v. Humphrey,*
 512 U.S. 477, 117 S.Ct. 2364, 129 L.Ed.2d 383 (1994) .......................................... 17

*Hudson v. Palmer,*
 468 U.S. 517,  104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ............................................. 5

*LaBrec v. Walker,*
 948 F.3d 836 (7th Cir. 2020) ........................................................... 9, 10

*Langston v. Peters,*
 100 F.3d 1235 (7th  Cir. 1996) ............................................................. 19

*Lewis v. Richards,*
 107 F.3d 549 (7th Cir. 1997) ........................................................... passim

*Miller v. Harbaugh,*
 698 F.3d 956 (7th Cir. 2012) ............................................................... 22

*Miller v. Indiana Dep't of Corrections,*
 75 F.3d 330 (7th Cir. 1996) ................................................................ 17

*Moore v. Mahone,*
 652 F.3d 722 (7th Cir. 2011) ............................................................... 17

*O'Brien v Indiana Dep't of Correction*s,
    495 F.3d 505 (7th Cir. 2007)............................................................... 12, 13
*Peate v. McCann,*
    294 F.3d 879 (7th Cir. 2002) .................................................................. 16
*Rhodes v. Chapman,*
    452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)................................. 5
*Riccardo v. Rausch,*
    375 F.3d 521 (7th Cir. 2004) .................................................................... 7
*Santiago v. Walls,*
    599 F.3d 749 (7th Cir. 2010) .................................................................... 6
*Sinn v. Lemmon,*
    911 F.3d 412 (7th Cir. 2018) .............................................................. 9, 10
*U.S. v. Tokash,*
    282 F.3d 962 (7th Cir. 2002) .................................................................. 23
*Walsh v. Mellas,*
    837 F.2d 789 (7th Cir. 1988) .................................................................. 19
*White v. Gaetz,*
    588 F.3d 1135 (7th Cir. 2009) ................................................................ 24
*Wilson v. Seiter,*
    501 U.S. 294,  111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)........................... 22

## RULES

Federal Rules of Evidence 201(b)(2) ........................................................... 24

## ARGUMENT

Most important for this reviewing Court to consider is the overwhelming evidence in dispute, specifically that Mueske and Walker had actual knowledge of Hunter's complaints and failed to take even a small step toward ensuring his safety. Their inaction speaks volumes. Moreover, Mueske and Walker do not assert a single argument against the procedural certainty of the Redgranite Inmate Handbook and the duty it placed on Mueske to accept, document properly, and take action in response to an inmate's safety concern. Their silence suggests either that the Inmate Handbook procedures rarely are adhered to or that officials in their position have discretionary powers to determine whether threats of violence are to be abated or ignored. This is bolstered by the fact that Mueske had no mechanism to record or identify whether a request was received, reviewed, investigated, or simply thrown in the trash. With regard to Walker, defendants-appellees are incorrect that he cannot be held liable simply because his job duties do not mirror Mueske's. Walker "staying within [his] job responsibilities" undoubtedly includes protecting inmates because the law compels it.

Because the Constitution protects against inhumane prison conditions, *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), including the duty of prison staff to "take reasonable measures to guarantee the safety of the inmates," *Hudson v. Palmer,* 468 U.S. 517, 526–527, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), this Court should reverse and remand this case for trial.

### I.  Mueske and Walker had Adequate Knowledge that Patterson Presented a Serious Risk of Harm to Hunter.

To achieve reversal of the district court's decision, Hunter is required to produce sufficient evidence for a rational jury to find that Patterson, his cellmate, presented an objectively serious risk of harm, and that Mueske and Walker were deliberately indifferent to the risk that Patterson would harm Hunter based on the threats he made against Hunter. Here, Hunter demonstrated that a properly instructed and rational jury could conclude that Mueske and Walker subjectively knew about the risk to Hunter's safety and did not take reasonable measure to abate it. *See Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (noting that deliberate indifference is probable when an inmate provides facts to draw an inference of substantial harm.)

Despite the various undisputed facts that show Mueske and Walker were deliberately indifferent to a known risk (Patterson's threats, about which Hunter complained), they continue to assert that they were not deliberately indifferent to the serious and obvious risk that Patterson would follow through on those threats. Mueske's and Walker's inaction condoned the violent outburst from Patterson. *Santiago v. Walls,* 599 F.3d 749, 756 (7th Cir. 2010) (discussing that when an official does not respond to a risk that was reasonably known to them, the court must treat their inaction as "effectively condon[ing] the attack.".)

Because Hunter has clearly established that Mueske and Walker ignored credible complaints of imminent threats of violence against an individual they were *bound* to protect, their deliberate indifference cannot be rewarded nor ignored.

### A. Hunter communicated several specific and credible threats that were continually ignored.

Mueske and Walker argue that Hunter's complaints did not provide knowledge of a specific and credible threat of serious harm. Dkt. No. 17 at 17. In fact, they assert that "only one of the requests communicated a threat." *Id*. That ultimately concedes that Hunter met his burden in showing that they were subjectively aware of the risk to his life. "In failure to protect cases, '[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (citations omitted). Defendant-appellees openly conceded that they had actual knowledge of at least one of Hunter's complaints that described an actual threat of harm. Dkt. No. 17 at 17.

It is true that Mueske and Walker were not required to *believe* that Hunter's life was in physical danger. *Gevas,* 798 F.3d at 482; s*ee also Riccardo v. Rausch,* 375 F.3d 521, 525 (7th Cir. 2004) ("[g]uards ... must discriminate between serious risks of harm and feigned or imagined ones"). However, to survive summary judgment, Hunter only was required to show that Mueske and Walker had **knowledge** of his complaints such that a reasonable jury could assess the credibility of Mueske and Walker's mental state surrounding the notice that was provided. *Gevas*, at 482; *see Farmer*, 511 U.S. at 842.

### B. Hunter's complaints highlighted an imminent threat that materialized into severe, preventable injuries.

Mueske and Walker, inaccurately, contend that Hunter never communicated an imminent threat of serious harm. Dkt. No. 17 at 20. Courts have held that "a fact finder could typically infer an official's knowledge from evidence that the inmate complained to the official *about a specific threat* to [his] safety—so long as the complaint 'identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant,' as opposed to a complaint that 'convey[s] only a generalized, vague, or stale concern about one's safety.'" *Balsewicz v. Pawlyk*, 963 F.3d 650, 655 (7th Cir. 2020) (*citing Gevas*, 798 F.3d at 480–81). Hunter complained on numerous occasions to Mueske and Walker about a specific, credible, and imminent risk of serious harm and even identified the prospective assailant, Patterson. *Id*. Hunter's complaints specifically articulated the threats being made, i.e., "me and my celly are not getting along at all, it is like walking on eggshells, please help," "please move me my celly is always made at me, keeps threaten me, I fear for my life," and that Patterson threatened to beat Hunter with a cribbage board. *See* Dkt. No. 12, at p. 14, 15, 17; *Gevas*, 798 F.3d at 478 (holding that an inmate communicates a specifically articulated threat when he complains to prison officials that his cellmate is threatening him and that it is like "walking on eggshells,") Hunter also cited Patterson as the aggressor of the threats. What more was required of Hunter?

**Zero** action was taken to protect Hunter. Mueske did not investigate Hunter's complaints, nor did she move him. Neither Mueske nor Walker spoke with or interviewed Patterson to substantiate the claim. Neither alerted other prison officials

about the potential for harm. They simply sat back, put their feet up, and waited for the inevitable harm to occur.

When complaints such as those made by Hunter are articulated with accuracy and predictability based on credible assumptions, a failure to protect should be assumed. *See Gevas*, 798 F.3d at 483. Indeed, as Appellees are aware, this Court previously has held that even a single communicated threat is enough to satisfy this burden. *See Balsewicz,* 963 F.3d at 655. Hunter's complaints were particularized toward the threat he validly anticipated and named the exact perpetrator in each of his complaints – oral and written. Not only did Mueske personally receive Hunter's complaints and failed to act, but Walker's integrated assistance to Hunter by helping him file a formal Inmate Complaint clearly suggests Walker's awareness, participation, and overarching failure to protect. Both Mueske and Walker are prison officials with a duty to ensure that inmates are safe and secure. To claim that Hunter's attempts at seeking protection were "vague" or lacking imminency discredits his continuous efforts and shames him for following procedure by alerting correct staff members.

The specificity of an inmate's complaint is "one part of the greater analysis regarding" a prison official's subjective awareness. *LaBrec v. Walker*, 948 F.3d 836, 843 (7th Cir. 2020) (citing *Sinn v. Lemmon*, 911 F.3d 412, 421 (7th Cir. 2018)). In the past, courts held that an inmate must show he made specific complaints because the complaint is often the only information a prison official has of the danger to that inmates' safety. *Id*. Inmates do not need to communicate "advance knowledge" of

every serious threat to their safety to prove they faced a serious risk. *LaBrec*, 948 F.3d at 843 (citing *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018)); *see also Sinn*, 911 F.3d at 422; *Gevas* 798 F.3d at 481; *Farmer*, 511 U.S. at 842)).

When the communications between inmates and prison officials are disputed, the court does not resolve credibility differences; therefore, rendering summary judgment is inappropriate. *LaBrec*, 948 F.3d at 843. It is obvious that there are two disputed sides to whether Hunter's communication with Mueske and Walker were "credible," "imminent," or even received. Precisely for that reason, this Court should reverse the district court's holding because summary judgment was inappropriate.

## II. Mueske and Walker Were Deliberately Indifferent to a Serious Risk of Harm and Failed to Take Reasonable Measures to Protect Hunter.

Next, defendant-appellees argue that Mueske and Walker were not deliberately indifferent to Hunter's complaints because he was not "particularly credible" nor were his complaints suggesting immediacy. Dkt. No. 17 at 21-24. This argument also is flawed. The district court erroneously assumed that the fact that Mueske had actual knowledge on April 12 that Hunter alleged that Patterson caused him to fear for him life and did nothing about it was "immaterial." Dkt. No. 12, App. A at 10. It is known that the "deliberate indifference standard reflects a mental state somewhere between the culpability poles of negligence and purpose and is thus properly equated with reckless disregard." *Farmer*, 511 U.S. 825, 836, 114 S.Ct. 1970. Defendant-appellees (and the district court) erroneously contend that a stricter standard be applied. Yet, it is precisely Mueske and Walker's reckless disregard to

Hunter's safety that prolonged his fear and allowed Patterson to render a violent assault onto him.

Mueske was patently aware of Hunter's numerous complaints and callously denied at least one of them. *R. 64-8*. Mueske was the *only* individual who had the immediate and unfettered ability to change Hunter's cellmate assignment. Despite the district court's flawed outcome, it still agreed that **there is a disputed question of fact** with regard to Mueske's knowledge. Dkt. No. 12, App. A. at 9-10. The district court concluded that she likely ignored the April 12 request from Hunter lending her participation to be deliberately indifferent. *Id*. The district court erred in assuming that her failure to act upon the April 12 request did not lead to Patterson's beating of Hunter. It is inextricably tied. A reasonable jury certainly could find that had Mueske investigated the threat, instead of ignoring Hunter's complaints, Hunter would not have been brutally beaten by Patterson. Mueske's failure to take Hunter's complaints seriously and employ reasonable measures such as investigating them properly, and protecting Hunter from inevitable harm, constitutes deliberate indifference.

Mueske continued to ignore Hunter's complaints and as Hunter's frustration grew, he sought out assistance from other prison officials, i.e., Walker. The Inmate Handbook requires inmates to attempt to resolve issue with an appropriate staff member, *R. 64-2 at p. 45*, and when Walker learned of Hunter's safety concerns, Walker personally assisted Hunter in filing out an Inmate Complaint.

Defendant-appellees attempt to argue that Walker was not "personally involved" – this argument lacks merit. Dkt. No. 17 at 24. Walker, just as much as any

other prison official, is required to document risks posed to inmates and personnel alike. Walker possessed knowledge of the threats himself, serious enough to not only encourage Hunter to file a written complaint but also assisted Hunter in drafting and filing the complaint but failed to take reasonable action to protect Hunter. Plus, the failure to draft an incident report after speaking with Hunter[1] – who openly discussed Patterson's desire to kill him and with what tools Patterson planned to kill Hunter with – showcases that Walker deliberately ignored the risk to Hunter's life and enabled Patterson's eventual beating. *See Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997).

Reasonable measures are a critical piece for Hunter's success in establishing his civil rights claim and courts look to whether earlier steps by prison officials were taken to ensure that valid threats are taken seriously. *See O'Brien v Indiana Dep't of Corrections*, 495 F.3d 505 (7th Cir. 2007). In *O'Brien*, a former prison guard was convicted and sentenced to serve his term at a correctional facility. *Id*. at 506. Upon entering the facility, other inmates recognized the former guard. *Id*. The former guard requested that he be placed in protective custody and out of harm's way; he was removed from general population and placed into segregation while the prison investigated his request to be placed in protective custody. *Id*. Eventually, the former guard was moved to a unit for "at risk" prisoners but not separated from the entire

---

[1] As a prison staff member, when Walker is notified of inmate violence or threats, it is customary for him to notify his supervisors and write up an incident report. *R 64-3 at 35:16-24*. Walker testified that had an inmate told him about a specific threat to his or her safety, he would fill out an incident report and immediately notify his superior. Incident reports are to be filled out for "any odd circumstance" during a staffs' shift. *R 64-2 at 34:13-17*. Those circumstances range from a faulty computer to violent acts of inmates. *Id*. at 34:21-22. Walker did not notify his supervisors of the threats Patterson made to Hunter nor did Walker draft an incident report.

prison population. Four and a half years after being moved, two inmates in the "at risk" unit attacked the former guard. *Id*. at 506-507.

There, the district court found in favor of the prison officials holding that they took reasonable steps to abate the potential harm. *Id*. at 507. In relying on *Lewis v. Richards*, the court held that moving the former guard to a safe location in the prison was sufficient to abate the risk. *Id*. at 509. However, the *O'Brien* court plainly stated that had "the defendants in this case simply refused to do anything, [the] case might survive summary judgment." *Id*. (citing *Lewis*, at 553). The *O'Brien* court's instruction is decisive of the fine line that likely tilts the scale toward what is considered "reasonable" – undeniably when a prison official learns of a possible safety concern and "simply refuses to do anything." Here, Mueske and Walker refused to consider any form of protection because neither truly investigated the risk. It was not poor judgment or an off-the-cuff decision. Absolutely **no** effort was made to consider the nature of the threat or the availability of placing Hunter (or Patterson) in a different area of the prison. Walker and Mueske "simply refused to do anything" to abate the risk to Hunter's life. *Id*.

While defendant-appellees contend that Hunter's complaints did not properly communicate a threat, this Court has held that "walking on eggshells" is certainly sufficient. For instance, in *Gevas*, the prisoner repeatedly complained to prison officials that his cellmate posed a threat to his safety. 798 F.3d at 478. Gevas filed grievances in March and April 2008 that he wished to not be celled with alleged gang members. *Id*. Gevas changed cellmates in May 2008 and became cellmates with

13

Adkins. *Id*. Gevas stated that Adkins' hostile temperament had Gevas "**walking on egg shells**," and that Adkins "**wanted [Gevas] out of his cell**," by threatening Gevas on a daily basis to stab him. *Id*. (Emphasis added). Adkins' behavior made Gevas "fear for [his] life." *Id*. Gevas communicated his concerns to three staff members, on three separate occasions. *Id*. Gevas spoke to correctional staff in person and sent them letters. *Id*. None of them followed up with Gevas and the only response he received was that he could refusing housing and be sent to disciplinary segregation. *Id*.

The Court held that "once the defendants were made aware that Adkins was threatening Gevas, it was their obligation as prison officials to assess the reported danger and to take reasonable steps to address it if they found it to be a real one." *Gevas*, 798 F.3d at 484. This Court further held that it is a "well-settled aspect of Eighth Amendment jurisprudence" that prison officials have a duty to protect a prisoner once the official becomes aware that the prisoner is in danger of an assault by another prisoner. *Id*. (citing *Farmer*, 511 U.S. at 832-34). After the prison officials knew Gevas was in danger via his complaint that Adkins threatened to stab him, it was not enough that the officials made Gevas aware that he had an option to refuse housing, be subjected to discipline as a response, and transfer into disciplinary segregation. *Gevas*, 798 F.3d at 485.

Here, Mueske and Walker were made aware that Patterson was a threat to Hunter. Like the prison officials in *Gevas*, Mueske and Walker had an obligation to assess Hunter's reported danger and take reasonable steps to abate it. Neither

Mueske nor Walker had any reason to find that Hunter's complaints were not credible. *Gevas*, 798 F.3d at 478 (holding that inmates that complain that it "is like walking on eggshells" and identify their cellmate as the perpetrator is sufficient). Indeed, even Wilcox stated that of all of the inmates on the Unit, he feared Patterson the most. Even if they believed that Hunter's complaints were not credible, that credibility determination must be given to a jury to decide. Mueske's only argument that she acted on behalf of Hunter's was by choosing not to interview him. In addition, Mueske and Walker took no reasonable steps, let alone any steps, to abate the risk to Hunter's life. They did the opposite. They enabled Patterson's brutal beating of Hunter and that surely is deliberate indifference.

If prison officials know that there is a serious risk of harm or at least that there is a high probability of a serious risk of harm, and do nothing, that is deliberate indifference. *Dale,* 548 F.3d at 569 (citing *Billman v. Ind. Dep't of Corrections,* 56 F.3d 785, 788 (7th Cir. 1995)). The ultimate test of a prison official's response is "reasonableness in light of the surrounding circumstances." *Dale*, 548 F.3d at 569. Imprisonment strips prisoners "of virtually every means of self-protection and forclose[s] their access to outside aid[.]" *Farmer*, at 833. Like this Court held in *Gevas,* Mueske and Walker knew that Patterson was a violent inmate, received several complaints from Hunter identifying Patterson as the perpetrator, and never once took reasonable steps as an attempt to validate his complaints nor ensure his safety. Hunter followed orders by contacting the correct prison staff and was wholeheartedly ignored.

While it is true that the mere failure to "choose the best course of action does not amount to a constitutional violation," *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002), action that ignores the targeted inmate's safety, does, in fact, amount to a constitutional violation. *See Lewis*, 107 F.3d at 553. Mueske's failure to investigate Hunter's complaints, and Walker's failure to report Hunter's complaints up the chain of command, did in fact ignore the risk to Hunter's safety. Mueske and Walker did not need to take perfect measures; all that they had to do was take a *reasonable* one. Neither Mueske nor Walker showed that their conduct (i.e., to ignore Hunter's numerous complaints and fail to report Hunter's complaints up the chain) was reasonable. As a result, Hunter's perpetual stutter is a daily reminder of Mueske and Walker's deliberate indifference to the serious risk of harm that Patterson posed.

Mueske and Walker failed to take reasonable measures to protect Hunter. Their failure to do so necessitates reversal of the district court's decision.

## III.   Mueske and Walker's Inaction Casually Impacted Hunter's Severe Injuries.

The district court and defendant-appellees collectively fail to view the December 6, 2017, fight as entirely avoidable. Both suggest that Mueske and Walker's inaction did not cause Patterson to assault Hunter. However, Hunter's fear never subsided. Hunter's day-to-day interactions with an inmate who wished to kill him eventually boiled over.

Defendant-appellees attempt to suggest that Hunter provoked the fight between him and Patterson on December 6 ("the fight occurred because *Hunter* initiated an interaction with Patterson, even after Patterson had already been

assigned to a new cell."). Dkt. No. 17 at 27 (emphasis in original). Yet, if this were a true statement, Hunter certainly would have been subject to disciplinary action as a result. Defendant-appellee's assertion is wholly incorrect namely because Hunter was never disciplined for starting a fight with another inmate nor exists a single piece of evidence in the record to state otherwise.

Had Hunter been reprimanded internally, this suit would have been barred. Specifically, if an inmate was disciplined as a result of an interaction he or she initiated, they would be barred from maintaining a civil rights lawsuit. *Heck v. Humphrey*, 512 U.S. 477, 117 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *see also Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) (discussing that the rule of *Heck* is that a civil rights suit cannot be maintained by a prisoner if a judgment in his favor would "necessarily imply" that his conviction had been invalid); *Miller v. Indiana Dep't of Corrections*, 75 F.3d 330 (7th Cir. 1996) (applying the rationale of *Heck* to prison disciplinary proceedings). Nowhere has the defendant-appellees nor the district court suggested that Hunter's civil rights allegations are barred because of his "involvement" in creating the fight with Patterson. Therefore, any contention that Hunter is the perpetrator of his own assault on December 6 is without merit.

Causation is a jury determination and Hunter need only "produce evidence that [he] sustained actual injury and that [his] injuries had a causal connection with the alleged [Section 1983] violation." *Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010) (*quoting Berman v. Young*, 291 F.3d 976, 982 (7th Cir. 2002)). Both Mueske and Walker's failure in their respective duties to take reasonable measures to protect

Hunter from a widely known violent individual caused the December 6 fight to occur. It was obvious to Wilcox and other prison personnel that Patterson was dangerous – so much so that prison officials acted with a higher standard of diligence around him. In an ideal world, inmates should be able to confide in correctional officers and security staff to relay concerns about being attacked. Yet, in Hunter's experience, the translation of an attack was continually disregarded.

Defendant-appellees attempt to use *Lewis v. Richards* to bolster an argument that an elapse of several months automatically means that an attack was not imminent. Dkt. No. 17 at 20. However, a correct interpretation of *Lewis* suggests a different reality and is rather distinguishable from Hunter's beating. Lewis was attacked in November 1990, and after being attacked, he reported it to a prison official who ultimately did nothing. *Lewis*, 107 F.3d at 551. Lewis's perpetrator found out that Lewis reported the attack and continually threatened Lewis with physical harm. *Id*. Five months later, in April 1991, Lewis reported the same November attack to two different prison officials after visiting the prison infirmary to be treated for a condition he received because of the November attack. *Id*., at 551-552. Ultimately, Lewis wanted protection after leaving the infirmary because of the threats *he knew* existed but failed to communicate. *Id*. Lewis was attacked again in June 1991. *Id*. However, Lewis did not complain to prison officials between April and June of the pervasive threats. *Id*. Lewis reported the June attack only after the beating had occurred. *Id*.

The district court held that Lewis' claim failed for the November and June attack because there was no evidence that he complained to officials to substantiate whether they had actual knowledge of the second pending assault. Lewis had to demonstrate that the defendants either took no precautions to avoid a known danger or that the precautions he took ignored the risk which he faced. *Id.* At 553 (citing *Langston v. Peters*, 100 F.3d 1235, 1239 (7th Cir. 1996)); *Walsh v. Mellas*, 837 F.2d 789, 795-96 (7th Cir. 1988). Specifically, this Court wrote:

> Had the defendants in this case simply refused to do anything, Lewis' case might survive summary judgment. But the record speaks otherwise. They transferred Lewis to a different area in the prison, rather than placing him in protective custody. Almost five months had passed without incident since the first attack, defendants point out, and thus immediately prior to the second attack, there was **no indication** that Lewis [still] was in imminent danger. And because Lewis **failed to inform** prison officials when gang members in the new dorm made more threats against Lewis for being a "snitch," officials had no way of knowing that he was in heightened peril. *See Estate of Davis v. Johnson,* 745 F.2d 1066, 1071 (7th Cir.1984) (to demonstrate callous indifference to inmate safety, plaintiff must show a "strong likelihood" of violence.)

*Lewis,* 107 F.3d at 553–54 (emphasis added).

The outcome of *Lewis* is factually and legally distinguishable from Hunter's assault for various reasons. First, the prison officials *did* initially respond to Lewis's complaints by placing him in different areas of the prison after the first attack occurred. Here, Mueske and Walker did not respond to Hunter's complaints. They did nothing. Second, Lewis did not notify prison officials that he was receiving additional new threats between April and June in the area to which he had been moved. He complained of an attack that previously happened and did not provide new

information that another attack was on the horizon. Here, Mueske and Walker were aware of the threats Patterson posed to Hunter *before* the attack occurred. *Contra Lewis*, 107 F.3d 553-54.

How could the prison officials protect Lewis if they already took reasonable steps to place him in protective custody and did not learn of other threats to his safety to obtain adequate knowledge of the threats? The same cannot be said for Mueske and Walker. Zero action was taken to prevent a violent encounter despite learning several times that it was a valid threat. Mueske, in her only actual response to Hunter's various requests, stated, "You will not be interviewed" and I "do not accommodate roommate requests." *R 64-8*. Hunter was not complaining of previous assaults but was pointing to facts and information that supported a reasonable belief that Patterson was targeting him. In fact, had Mueske and Walker taken reasonable measures when they received Hunter's first complaint, the district court might not have erred by granting summary judgment. However, Mueske and Walker repeatedly ignored a known risk to Hunter's safety which shows that summary judgment was inappropriate.

With regard to Walker's authority, there is no dispute that he did not have control over bed assignments. That was Mueske's role. However, "[l]iability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592 594 (7th Cir. 2009). In *Burks*, the plaintiff sued the Secretary of the Wisconsin Dep't of Corrections and employees from the top of the department to the bottom for deliberate indifference to

20

his medical needs. *Id*. at 593. Only two of the seven defendants received the plaintiff's complaints. *Id*. at 594. One of the two was a complaint examiner, not on the medical staff. *Id*. at 595. The plaintiff alleged the complaint examiner was deliberately indifferent because she rejected the plaintiff's complaint regarding his medical needs. *Id*. She rejected it because the plaintiff's complaint was untimely. *Id*. The court held that the complaint examiner was not liable because she was doing her job and cannot be held accountable as a layperson for failing to tell medical staff to do their job. *Id*. at 596.

Here, Walker significantly deviated from his sworn duties and certainly should be held liable for taking unreasonable measures that ignored the significant risk to Hunter's safety. Walker unequivocally stated that when an inmate communicates a concern for his or her safety, Walker must report the complaint to higher up staff. Walker did not do that. *R 64-3 at 35:16-24*. Instead, and despite knowing Hunter's prior complaints were ignored, Walker instructed Hunter to write *another* complaint. Walker instructed Hunter to continue to be ignored and Walker's conduct effectively ignored the known risk to Hunter's safety. Walker had authority to do more than suggest that Hunter write another complaint that would be ignored.

It is true that a defendant cannot be held liable for a constitutional violation if they did not have the power to enforce the remedial steps to prevent it. However, that factor has only been applied in cases challenging *prison conditions* and never was used as reason to grant summary judgment or qualified immunity in favor of prison officials. *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) (assuming that the

21

defendants had the power to change the prison conditions regarding bunkbed assignments to prevent suicide attempts); *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997) (denying summary judgment because the defendants had the power to correct the prison conditions of the below freezing temperatures); *Del Raine v. Williford*, 32 F.3d 1024, 1038 (7th Cir. 1994) (ruling that there was no evidence suggesting that the defendants had no control over the cold prison conditions); *Wilson v. Seiter*, 501 U.S. 294, 301, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (vacating the order of summary judgment in favor of defendants because lower court determine if defendants were deliberate indifferent to the prison conditions). Walker cannot escape liability by claiming that only Mueske had control of bed assignments. Both collectively had a duty to ensure Hunter's protection from harmful, violent individuals hurling credible threats.

A reasonably jury could indeed determine that Mueske and Walker's inaction was a piece in the causal chain leading to the violent assault on Hunter. The district court misconstrued the record and usurped the role of the factfinder to make this determination unilaterally. This Court should find that causation is met, and Hunter's allegations should have survived summary judgment to necessitate reversal.

## IV. Hunter's Behavior Was of Self-Protection Because Patterson Was a Known, Violent Individual.

Defendant-appellees inappropriately conflate Hunter's behavior as a means for his acquiescence of the subsequent bloody beating he sustained from Patterson. To suggest that an inmate sharing space with an intolerably eruptive person would do

anything to avoid triggering his cellmate is beyond nonsensical. Indeed, defendant-appellees agree. Dkt. No. 17 at 20 ("As this Court has noted, 'prisons are inherently dangerous places and are inhabited by violent people.' *U.S. v. Tokash*, 282 F.3d 962, 970 (7th Cir. 2002)"). Hunter spent months "walking on eggshells" with an individual he knew wished to harm him. Suggesting that Hunter's statements of "I love you brother" served anything other than pure protection is absurd. Prisons are hostile and ever-changing environments. It is clear from Hunter's deposition testimony that he endeavored to generate positive connections with his fellow inmates – Patterson included – to survive the hostile conditions of prison. This is a credibility determination, and it should be sent to the jury to decide if Hunter's actions were in fact a survival mechanism.

In addition, defendant-appellees contend that Hunter presented new evidence into his principal brief with relationship to Patterson's violent nature that supposedly was not presented to the district court. *See* Dkt. No. 17 at n.7, 11. While true that appellate courts must rely on the district court's designation of submitted documents as part of the record because appellate courts generally lack the means to authenticate documents, that concern is not present here.

First, there are several rules that allow for the supplementation of the record. Generally, supplementation is to be considered lightly, or through leave of the Court. However, federal courts of appeal can take judicial notice of highly indisputable facts or other court proceedings that directly relate to the issues on appeal. *See* Federal Rules of Evidence 201(b)(2) ("The court may judicially notice a fact that is not subject

to reasonable dispute because it…. can be accurately and readily determined from sources whose accuracy cannot reasonably be questions.") Appellant's Appendix B contains a Plea and Sentencing transcript of Patterson's criminal conviction that is public record. *See White v. Gaetz*, 588 F.3d 1135, 1137 n. 2 (7th Cir. 2009) (taking judicial notice of state court transcript). No portion of Appendix B is undiscoverable nor is it under seal. *See State of Wisconsin v. Donald D. Patterson*, Waushara County (Wisconsin), Case No.: 18-CF-10.

Additionally, the Plea and Sentencing Transcript, while not presented directly, was the source of various lines of questioning during Patterson's deposition. Despite the exact document not marked as an exhibit for Patterson (as he was relatively hostile and uncooperative), Patterson described his convictions under oath. Hunter's use of Appendix B was to demonstrate both a public record and a reality already testified to by Patterson and Wilcox – that Patterson was a violent individual who sought out negative interactions with others. Patterson and Wilcox's depositions were provided to the district court on summary judgment and therefore is not "brand new" as defendant-appellee's wish to contend. *R. 64-4 and 64-6*. Rather, the transcript is tied to the undisputed fact that Patterson is a highly dangerous individual and is otherwise public record.

Altogether, the strikes on Hunter's character the day of the attack are an attempt to discredit him. His conduct should be left for jury determination and not to be argued among the parties or before the Court.

## <u>CONCLUSION</u>

Based on the arguments made herein, Appellant Michael Lee Hunter requests this Court **REVERSE** and **REMAND** this case for further proceedings.

Dated this 12th day of September, 2022.

**CADE LAW GROUP LLC**

By: <u>*s/Annalisa Pusick*</u>
     Nathaniel Cade, Jr.*
     Wis. Bar No. 1028115
     Annalisa Pusick
     Wis. Bar No. 1116379
     P.O Box 170887
     Milwaukee, WI 53217
     (414) 255-3802 (phone)
     (414) 255-3804 (fax)
     nate@cade-law.com
     annalisa@cade-law.com

     Attorneys for Plaintiff-Appellant

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(A)(7), FRAP RULE 32(G), AND FRAP RULE 32(C)</u>

The undersigned counsel of record for Plaintiff-Appellant furnishes the following in compliance with F.R.A.P Rule 32(a)(7) and Cir. R. 32(c):

I hereby certify that this brief conforms to the type-volume rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced 12-point (or larger) type-face fond. The length of this brief is 5,687 words.

Dated this 12th day of September, 2022.

**CADE LAW GROUP LLC**

By: <u>*s/Annalisa Pusick*</u>
Nathaniel Cade, Jr.*
Wis. Bar No. 1028115
Annalisa Pusick
Wis. Bar No. 1116379
P.O Box 170887
Milwaukee, WI 53217
(414) 255-3802 (phone)
(414) 255-3804 (fax)
nate@cade-law.com
annalisa@cade-law.com

Attorneys for Plaintiff-Appellant

## PROOF OF SERVICE

Pursuant to F.R.A.P. 25(d), I e-filed a digital copy of the brief in searchable PDF format via the ECF System and served all counsel of record with the digital version via CM/ECF System to the following:

> Lynn K. Lodahl
> Assistant Attorney General
> Wisconsin Department of Justice
> Post Office Box 7857
> Madison, WI 53707-7857
> Phone: (608) 264-6219
> Fax: (608) 294-2907

Dated this 12th day of September, 2022.

> Respectfully submitted,

> **CADE LAW GROUP LLC**

> By: *s/Annalisa Pusick*
> Nathaniel Cade, Jr.*
> Wis. Bar No. 1028115
> Annalisa Pusick
> Wis. Bar No. 1116379
> P.O Box 170887
> Milwaukee, WI 53217
> (414) 255-3802 (phone)
> (414) 255-3804 (fax)
> nate@cade-law.com
> annalisa@cade-law.com

> Attorneys for Plaintiff-Appellant

☑

## CERTIFICATE OF SERVICE
**Certificate of Service When All Case Participants Are CM/ECF Participants**

I hereby certify that on _September 12, 2022_ , I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Annalisa Pusick

☐

## CERTIFICATE OF SERVICE
**Certificate of Service When Not All Case Participants Are CM/ECF Participants**

I hereby certify that on _____ , I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

counsel / party:                                    address:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

s/_____